UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUSKET CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-100 |
| | § | |
| SUNCOR ENERGY (U.S.A.) MARKETING, INC., | § | |
| | § | |
| *Defendant*. | § | |

# ORDER

Pending before the court is defendant Suncor Energy (U.S.A.) Marketing, Inc.'s motion to dismiss for failure to state a claim upon which relief can be granted. Dkt. 29. After considering the motion, response, reply, arguments made at the hearing, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff Musket is a commodity supply, trading, and logistics company that ships crude oil by rail. Dkt. 25 at 2. Defendant Suncor is a crude oil supply, marketing, and trading company. Dkt. 25 at 2. Musket and Suncor entered into a "Master Agreement for U.S. Crude Oil Purchase, Sale or Exchange Transactions" ("Master Agreement") as well as a "Physical Transaction Confirmation"[1] as contemplated by the Master Agreement. Dkt. 25 at 2–3. Pursuant to the Master Agreement, Musket agreed to buy, and Suncor agreed to sell, crude oil. Dkt. 25 at 3. The Transaction established the quantities, delivery dates, delivery points, and price of the crude oil

---

[1] The Physical Transaction Confirmation is comprised of the Transaction, which confirms the terms of the agreement, and subsequent schedules which "memorialize the 'Committed Volume' and 'Price' for any given pricing period." Dkt. 29-1 at 17–24. The Master Agreement, Transaction, and subsequent schedules attached to the Transaction, form the entire agreement between the parties. Dkt. 29-1 at 22. The court will refer to the Transaction and all relevant schedules as one document, the Transaction.

Suncor agreed to deliver to Musket's terminal in Windsor, Colorado. Dkt. 29-1 at 17. Under the terms of the Transaction, Musket would expand its terminal in order to meet the schedule of "Committed Volumes"[2] Suncor would supply, as listed in the Transaction. Dkt. 29-1 at 17.

Musket filed its second amended complaint alleging the following causes of action: (1) breach of contract – failure to deliver crude; (2) breach of contract – failure to comply with compensation provisions; (3) breach of contract – failure to comply with confidentiality provisions; (4) fraudulent inducement; (5) fraud; (6) breach of implied covenant of good faith and fair dealing (in the alternative); and (7) punitive damages. Dkt. 25. Musket asks for damages for the above listed causes of action in amounts to be proven at trial. Dkt. 25. In addition to damages in relation to breach of contract, fraudulent inducement, and fraud, Musket requests an award of attorneys fees. Dkt. 25 at 13–14.

Suncor filed a motion to dismiss in response to Musket's second amended complaint. Dkt. 29. Suncor contends that "Musket's fraud, fraudulent inducement, 'breach of contract—failure to comply with compensation provisions,' breach of the implied covenant of good faith and fair dealing, and punitive damages allegations should all be dismissed with prejudice." Dkt. 29 at 6–7.

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2] "Committed Volumes" are the amount of volumes of product identified in the Transaction that will be delivered by the seller and received by the buyer according to the schedule in the Transaction. Dkt. 29-1 at 17.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

Generally, when "considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Because "a Rule 12(b)(6) motion is viewed with disfavor and rarely granted, a complaint may not be dismissed unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (emphasis added) (internal quotations omitted).

### III. ANALYSIS

**A. Fraud Claim**

Musket makes two allegations of fraud. Dkt. 25 at 9 – 12. First, Musket alleges that Suncor represented that it "had the capacity to meet nominated volumes and intended to deliver those volumes," even though it suffered an Interruption[3] and knew it would be unable to meet the

---

[3] "Interruption" is a specifically-defined, bargained-for provision in the Master Agreement. Dkt. 29-1 at 2–16.

nominated volumes as required under the Master Agreement. Dkt. 25 at 9–10. Second, Musket alleges that Suncor used the false promise of future business transactions to stall and distract Musket from collecting payments which Suncor owed under a provision of the Transaction . Dkt. 25 at 11. Specifically, Musket claims that Suncor intentionally misrepresented its future pipeline infrastructure plan for the terminal expansion as well as a long-term contract expansion with Musket. Dkt. 25 at 11–12.

> 1. *Capacity to Meet Nominated Volumes*

Under New York law, the law governing the Master Agreement, the elements required to prove fraud are "a material, false representation, and intent to defraud, reasonable reliance on the representation, and damage to the plaintiff as a result." *Microtel Franchise & Dev. Corp. v. Country Inn Hotel*, 923 F. Supp. 415, 417 (W.D.N.Y. 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). However, under New York law, "[a] cause of action to recover damages for fraud does not lie when the only fraud charged relates to a breach of contract." *Marlow v. Ferrari of Long Island, Inc.*, 876 N.Y.S.2d. 165, 165) (N.Y. App. Div. 2009) (quoting *Carle Place Union Free Sch. Dist. v. Bat-Jac Constr., Inc.*, 813 N.Y.S.2d 748, 748 (N.Y. App. Div. 2006)).

Musket claims that it relied on Suncor's promises to meet the nominated volumes and, among other things, made "decisions relating to fulfilling Musket's own commercial obligations that directly relied upon Suncor's performance." Dkt. 25 at 10. The first issue that Musket complains of concerns the essence of the parties' obligations under the Master Agreement: Suncor's promise to deliver nominated volumes of crude oil and Musket's obligation to accept the deliveries. Dkt. 25 at 9. Musket cites several statements made by representatives of Suncor. Dkt. 25 at 9–10. None of these statements is collateral or extraneous to the Master Agreement made between Musket and

Suncor. *Marlow*, 876 N.Y.S.2d. at 165 (finding that dismissal of plaintiff's claim was proper when defendant did not make any collateral or extraneous statements). As such, the claim asserted by Musket that Suncor misrepresented its ability to fulfill its contractual obligations "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

    2.    *Fraudulent Representation to Avoid Payment Obligations*

The Transaction agreed to by the parties explains that due to the nature of the product that is sold and received, "the parties will periodically negotiate in good faith the purchase price and the applicable time period that a given purchase price will apply to ('Pricing Period')." Dkt. 29-1 at 18. In the event "the parties cannot agree on a price for a given Committed Volume" or "are unable to identify a profitable market for a given Committed Volume" the Transaction details the parties' obligations under either scenario, defined as Alternative #1 or Alternative #2, respectively. Musket claims that Suncor incurred payment obligations under Alternative #2 and used a proposed agreement for a future contract extension and pipeline installation to "stall and distract" Musket from demanding that Suncor meet its obligations. Dkt. 25 at 11. Musket states that conversations took place "in the spring of 2014" during which Suncor approached Musket about a contract extension and a proposed pipeline plan. Dkt. 25 at 11. Musket then states Suncor requested a discount on amounts due under the Master Agreement for August and September of 2014. *Id.* Musket alleges that a Suncor representative agreed to pay "$328,716 – a steep discount from the contractual obligation of approximately $1.4 million." *Id.* A month later, Suncor again requested to combine two payments owing under the contract. *Id.* The court assumes an agreement was reached because Musket asserts that "these discounts were offered in reliance on Suncor's misrepresentations regarding the [future] contract extension and pipeline connection." *Id.* In its complaint Musket ties these occurrences together and labels it a "fraudulent scheme." *Id.*

Musket claims that the alleged misrepresentations resulted in more than stalled payments alone. *Id.* Specifically, Musket states that Suncor's alleged misrepresentations caused it significant damage because Musket sacrificed any relationship with other suppliers in order to meet Suncor's demand to be the exclusive supplier to the Windsor terminal. Dkt. 25 at 11–12. Musket states it was later told that Suncor had no intention of pursuing a long-term extension of the Master Agreement, a pipeline connection, or the infrastructure improvement plan suggested by Suncor. Dkt. 25 at 12. Musket claims it no longer has the crude oil required to efficiently operate its Windsor terminal as a result of its reasonable reliance on Suncor's statements. *Id.*

In response to Musket's allegation, Suncor again argues that this fraud claim is related to a breach of contract allegation. Dkt. 29 at 9. Suncor points to Musket's statements in the second amended complaint that the fraud (of securing a discount based on false representations) relates to Suncor's failure to perform in August and September 2014. *Id.* Second, Suncor argues in relation to all of Musket's fraud claims that Musket fails to satisfy the heightened pleading requirements of Federal Rules of Civil Procedure 9(b). Dkt. 29 at 8–9. Specifically, Suncor claims that Musket fails to set out "the who, what, when, where, and how" of the fraud. *Id.*

Because Musket did not plead this fraud claim with particularity, as required by Rule 9(b), there is no need to address Suncor's argument that Musket's claim relates to obligations owed under the Master Agreement. Fed. R. Civ. P. Rule 9(b). That rule usually requires that the plaintiff identify "the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation marks and citations omitted). Such information should be readily available prior to discovery to the typical fraud plaintiff who was the direct recipient of fraudulent information. *See* 5A Charles Alan Wright et. al., Federal Practice and Procedure § 1297 (3d ed. 2004) (explaining that requiring that fraud be pled

6

with precision allows defendants to understand "the acts or statements or failures to disclose" on which the plaintiff actually relied). The Fifth Circuit has explained that

> [i]n cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discover, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology," but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading" and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

*United States v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 829 (S.D. Tex. 2014) (citing *Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

As discussed earlier, Musket states the who, what, where, when and how of a proposed infrastructure improvement plan that Suncor discussed with Musket. Dkt. 25 at 11. Musket also states the who, what, and when of Suncor's request for relief from Suncor's payment obligations under Alternative #2. *Id.* However, Musket fails to plead who, when, where, and how, a conversation, or exchange, took place that would link these two separate events together that would indicate fraud by Suncor. "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he [or she] obtained thereby." *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Without satisfying the additional pleading requirements of Rule 9(b) it is not plausible to conclude that Suncor knew in the spring of 2014 that it would incur additional obligations under the Master Agreement in August and September of that year and therefore needed to create a "fraudulent scheme" in order to obtain those discounts. Musket's second issue raised in its fraud claim does not

meet the heightened pleading standard of Rule 9(b).

Because Musket fails to state a claim for which relief can be granted under either allegation of fraud, Suncor's motion to dismiss the fraud claim is GRANTED.

## B. Fraudulent Inducement Claim

Musket claims that prior to the execution of the Master Agreement between Musket and Suncor, representatives from Suncor stated Suncor could '"move 200,000 to 250,000 barrels per day"' and could 'provide 20,000 barrels per day of crude to [Musket's] terminal.'" Dkt. 25 at 8. Musket asserts that it relied on this representation by Suncor when it entered into the Master Agreement to provide Suncor with exclusivity at Musket's terminal. *Id.* Musket alleges that Suncor "knew or should have known that those representations were false because it had no ability and no past record of supplying such a volume of crude, let alone the 20,000 barrels per day of crude it agreed to deliver to the Windsor terminal." Dkt. 25 at 9. Suncor disputes this claim based on the contractual waiver of reliance. Dkt. 29 at 12. Suncor also argues that the claim for fraudulent inducement fails as a matter of law because it is based on an opinion or a hope for a future action, which cannot sustain an action for fraud. Dkt. 29 at 13.

There is no need for the court to address the issue of whether the statements contained an opinion or a hope for a future action because the contract's waiver of reliance is controlling. Under New York law, a merger clause that contains a specific disclaimer "will defeat any allegation that the contract was executed in reliance upon the representations to the contrary." *Taormina v. Hibsher*, 626 N.Y.S.2d 559, 560 (N.Y. App. Div. 1995) (finding a general merger clause is insufficient to exclude parol evidence, however a specific merger clause will prevail). "Only where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, a provision that the parties are not bound by or relying upon representations or omissions as to

8

the specific matter, is a plaintiff precluded from later claiming fraud on the ground of a prior misrepresentation as to the specific matter." *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 980 N.Y.S.2d 21, 21 (N.Y. App. Div. 2014).

The relevant language of the Master Agreement follows:

> [Musket] . . . (ii) is not relying on any representation, warranty, or communication (written or oral) of [Suncor] . . .; (iii) no communication received from the other Party shall be deemed to be an assurance or guarantee as to the expected results of any transaction; (iv) it is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts the terms, conditions and risks of each transaction; (v) it is capable of assuming, and assumes, the risks of each transaction; and (vi) the other Party is not acting as a fiduciary for or an advisor to in in respect of any transaction . . .

Dkt. 29 at 12. The specific matter that Musket is complaining of is Suncor's representations as to its ability to perform the transactions as agreed in the Master Agreement. Dkt. 25 at 8–9. However, the Master Agreement states that in regards to the "expected results of any transaction" Musket did not rely on "any representation, warranty, or communication (written or oral)." Dkt. 29 at 12. As such, the merger clause of the Master Agreement governs the particular subject matter at issue. Musket is precluded from claiming fraud in the inducement in reliance upon any parol evidence. Suncor's motion to dismiss Musket's claim of fraudulent inducement is GRANTED.

**C. Breach of Contract – Failure to Comply with Compensation Provisions Claim**

Musket claims that Suncor has failed and refused to comply with the compensation provisions detailed in the Confirmation. Dkt. 25 at 6. The first provision, titled "Alternative #1," has a condition precedent that the parties have exhausted "reasonable commercial efforts but cannot agree on a price for a given Committed Volume." Dkt. 29-1 at 19. The second provision, titled

9

"Alternative #2," has a condition precedent that the parties have exhausted "reasonable commercial efforts but are unable to identify a profitable market for a given Committed Volume." *Id.*  Musket alleges that Suncor is liable under Alternative #1, or alternatively, Alternative #2, but not both. Dkt. 25 at 8–9.  Musket alleges that the crude oil was not delivered as per the Master Agreement because Suncor would not agree on a price with Musket, or alternatively, could not identify a profitable market for the oil, and therefore breached the contract as a result of one of those theories. Dkt. 30 at 8.  In Musket's response to Suncor's motion to dismiss, Musket asserts that through "an evidentiary exercise" it will determine which alternative condition of the contract applied to Suncor's breach. *Id.*  Musket claims to be damaged by Suncor's actions because both of the alternatives included a "per barrel fee" to be paid to Musket in the event that the condition precedent was triggered, and Suncor has not paid either fee. Dkt. 25 at 8.

It is not *beyond doubt* that Musket is owed the "per barrel" fee due to a breach on the part of Suncor because the parties are still disputing whether Suncor is in breach of contract for failure to deliver crude oil. *Leleux*, 178 F.3d at 754 (holding that a complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief). Dkt. 25 at 6.  If one assumes that all of Musket's allegations in its complaint are true, and Suncor did breach the Master Agreement by failing to deliver crude oil, than Musket has raised a plausible claim that discovery will reveal that one of the two alternatives apply to explain the non-delivery. *Twombly*, 550 U.S. at 556 (finding that the plaintiff can survive a motion for dismissal by showing a reasonable expectation that discovery will reveal evidence of the issue complained of).  If Musket shows that one of the two alternatives does apply, Musket would be entitled to the fee agreed to by the parties in the Master Agreement. Because "a Rule 12(b)(6) motion is viewed with disfavor" it is premature under these circumstances to dismiss Musket's

claim. *Leleux*, 178 F.3d at 754. Accordingly, Suncor's motion to dismiss Musket's claim of breach of contract – failure to comply with compensation provisions is DENIED.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing (In the Alternative) Claim

Musket alleges that Suncor breached the implied covenant of good faith and fair dealing by depriving Musket of "the right to receive the benefits under their Master Agreement and Confirmation." Dkt. 25 at 13. However, Musket acknowledges that it cannot recover for both breach of contract and the implied covenant of good faith and fair dealing. Dkt. 30 at 8.

New York law is clear that a breach of the implied covenant of good faith and fair dealing is simply a breach of the agreement that the parties are bound by, in this case the Master Agreement. *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 11 (E.D.N.Y. 1998). "No independent cause of action exists for breach of the duty of good faith; rather, such a claim is merely a claim for breach of contract." *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 999 F.Supp. 2d 690, 758 (D.N.J. 2014). Accordingly, this claim is duplicative of Musket's breach of contract claim and must be dismissed. *O'Hearn*, 22 F. Supp. 2d at 11. Suncor's motion to dismiss Musket's claim of breach of the implied covenant of good faith and fair dealing is GRANTED.

### E. Punitive Damages Claim

Musket acknowledges in its response to Suncor's motion to dismiss that under New York law and the parties' agreement it is not entitled to punitive damages for any breach of contract claim. *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994) (holding that "punitive damages are not recoverable for an ordinary breach of contract"); Dkt. 30 at 10. Musket's only claim for punitive damages is in relation to its fraud and fraudulent inducement claim.

*Id.* Those claims have been dismissed under this order and as such, Suncor's motion to dismiss Musket's claim for punitive damages is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Suncor's motion to dismiss Musket's claims for fraud, fraudulent inducement, breach of implied covenant of good faith and fair dealing, and punitive damages is GRANTED. Suncor's motion to dismiss Musket's claim for breach of contract - failure to comply with compensation provisions is DENIED.

Signed at Houston, Texas on October 6, 2015.

_____
Gray H. Miller
United States District Judge