United States District Court
Southern District of Texas

**ENTERED**

November 15, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

MUSKET CORPORATION,                    §
                                       §
         *Plaintiff*,                  §
                                       §
v.                                     §        CIVIL ACTION H-15-100
                                       §
SUNCOR ENERGY (U.S.A.) MARKETING, INC., §
                                       §
         *Defendant*.                  §

## ORDER

Pending before the court are (1) plaintiff Musket Corporation's ("Musket") objections to and motion to strike defendant Suncor Energy (U.S.A.) Marketing, Inc.'s ("Suncor") summary judgment evidence (Dkt. 84) ("Musket's SJE Objections"); (2) Suncor's objections to and motion to strike Musket's evidence filed in response to Suncor's motion for summary judgment (Dkt. 95) ("Suncor's SJE Objections); and (3) Musket's objections to and motion to strike Suncor's evidence filed in response to Musket's motion for partial summary judgment on Suncor's affirmative defenses (Dkt. 99) ("Musket's PSJE Objections").  After considering the motions, responses, and replies, the court is of the opinion that (1) Musket's SJE Objections (Dkt. 84) should be OVERRULED, and the associated motion to strike should be DENIED; (2) Suncor's SJE Objections (Dkt. 95) should be SUSTAINED IN PART AND OVERRULED IN PART, and the associated motion to strike should be GRANTED IN PART AND DENIED IN PART; and (3) Musket's PSJE Objections (Dkt. 99) should be OVERRULED, and the associated motion to strike should be DENIED.

## I. BACKGROUND

There are currently two motions for summary judgment and one motion for partial summary judgment pending in this case.  Dkts. 72, 73, 78.  The court is unable to address the motions for summary judgment and partial summary judgment until it rules on the plethora of evidentiary objections lodged by both parties.

This is a breach of contract case.  Musket is a commodity supply, trading, and logistics company, and Suncor is a crude oil supply, marketing, and trading company.  Dkt. 25 (second amended complaint).  In April 2013, Musket and Suncor entered into a Master Agreement for U.S. Crude Oil Purchase, Sale, or Exchange Transactions (the "MSA") and a Physical Confirmation Transaction (the "Confirmation").  The MSA relates to Musket's agreement to buy and Suncor's agreement to sell crude oil.  *Id.*  The Confirmation establishes the logistics such as quantities, delivery dates, and price.  *Id.*  Musket claims that Suncor did not deliver the crude oil in the agreed-upon quantities, did not comply with the compensation provisions in the Confirmation, and failed to abide by the confidentiality provisions in the MSA and Confirmation.  *Id.*  Suncor asserts various affirmative defenses, including that (1) Musket's claims are barred by Section S of the MSA, which relates to exclusions and limitations; and (2) Musket's claims are barred due to the occurrence of an Interruption as defined by the MSA.  Dkt. 37.

As noted, both parties have now moved for summary judgment and asserted multiple evidentiary objections.  This order addresses only the objections to evidence contained at docket entries 84, 95, and 99.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The comments to the Rule indicate that "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment.  Under Rule 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that *would* be admissible in evidence, and show that the . . . declarant is competent to testify on the

matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added). Taken together, it is clear that these rules allow evidence at the summary judgment stage that is not perfectly authenticated so long as there is no question that the proponent will be able to prove that the evidence is what it purports to be at trial. Musket does not object that these documents are not actually what they purport to be, only that they are not perfectly authenticated at this stage.

Under Rule 901(a), in order to properly authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Under Rule 802, hearsay "is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise." Fed. R. Evid. 802. There are, of course, many exceptions to the rule against hearsay in the Federal Rules of Evidence, including the business records exception (Rule 803(6)). And, certain types of statements are not hearsay under the Rules, such as a statement by an opposing party that is offered against that party (Rule 801(d)) ("Statements That Are Not Hearsay").

### III. ANALYSIS

#### A. Musket's SJE Objections (Dkt. 84)

Musket objects to Suncor's summary judgment evidence and moves to strike certain exhibits as well as all references to the exhibits in Suncor's motion for summary judgment. Dkt. 84. It first objects to Exhibits A, J, L, R1–R10, and S1–S27 as constituting hearsay or not being properly authenticated. *Id.* It then objects to portions of three transcripts of depositions contained at Exhibits B, C, and G as incomplete, improper, or misleading. *Id.* The court will first consider the authentication and hearsay objections and will then address the objections to the deposition transcripts.

1.      **Suncor Exhibits A, J, L, R1-R10, S1-S27**

Musket first objects to the following exhibits to Suncor's motion for summary judgment: Exhibits A, J, L, R1-R10, and S1-S27.  Dkt. 84.  Exhibit A is the MSA and Confirmation.  *Id.*  Exhibit J is an email from Clark Henry to Brian O'Rourke.  *Id.*  Exhibit L is an email from Clark Henry to Kent McAlister.  *Id.*  Exhibits R1-R10 and S1-S27 are emails that were attached to the declaration of Brian C. Boyle, who is a lawyer at the firm representing Suncor and attested that the emails attached to his declaration were "true and correct copies."  *Id.*; Dkt. 73-1 (Boyle Dec.). Musket asserts that Boyle cannot authenticate these documents based on personal knowledge. Dkt. 84.  Musket also objects that the emails constitute hearsay.  *Id.*

Suncor responds to Musket's objections by first noting that it is absurd for Musket to object to the very contract upon which it bases its entire claim because Suncor did not properly authenticate it.  Dkt. 97.  Substantively, Suncor notes that the bar for authentication in not high and that Boyle's declaration is sufficient for the court to conclude that the documents are what they purport to be.  *Id.* Suncor additionally points out that most of the exhibits (Exs. A, J, R-2, R-4, R-5, S-1, S-6, S-8, S-11, S-17, S-19, S-20, S-21, S-22, S-26, and S-27) have been authenticated by a fact witness or Musket's own verified interrogatory answers.  *Id.*  Suncor additionally argues that even if the documents are *not* properly authenticated, all of the exhibits satisfy Federal Rule of Civil Procedure 56(c)(2), which only requires that exhibits offered in support of summary judgment be capable of being offered in admissible form at trial.  *Id.*  Suncor notes that the emails and attachments at J, L, R, and S are all from emails generated by Musket, so Musket's witnesses can authenticate them at trial.  *Id.*  Suncor also attaches, "in an abundance of caution," Boyle's amended declaration with its response.  *Id.*  In the amended declaration, Boyle clarifies that he has "personal knowledge of the facts stated [in the declaration] from the records involved in this litigation, and they are true and correct."  Dkt. 97-1.

Boyle additionally points out that Exhibit A was produced by Suncor during discovery, Exhibit J and L and the emails at Exhibits R1–R-10 were produced by Musket during discovery, and Exhibits S-1–S-27 were either produced by Musket or Suncor during discovery.  *Id.*  Musket objects to the amended declaration as untimely.  Dkt. 102.

The court will first address the objection to the amended declaration.  It will then address Musket's objections to Exhibit A and the emails at Exhibits J, L, R1–R-10, and S-1–S-27, *in seriatim*.

**a.  Objection to Amended Declaration.**  Musket objects to Boyle's amended declaration, which it contends is untimely.  Dkt. 102.  It additionally points out that the only change in the amended declaration from Boyle's original declaration is that Boyle now states that Musket produced the documents during litigation.  *Id.*  The court OVERRULES Musket's objection to the amended declaration.  Musket had sufficient time to respond to the minimal changes in the declaration.

**b.  Objection to Exhibit A.**  Exhibit A is the MSA and Confirmation (offered as a single document).  Musket—the party objecting to the MSA and Confirmation—filed a copy of the MSA and Confirmation as an exhibit to its own motion for summary judgment.  *See* Dkt. 72, Fjeld-Hansen Dec. Ex. A.  Musket does not contend that the copy attached to Suncor's motion is a different agreement and that the court should rely only on the copy filed with Musket's motion.  It merely takes issue with how Suncor "authenticated" the attachment.  *See* Dkt. 84.  The court finds that this is a frivolous objection.  The objection to Exhibit A is OVERRULED.

**c.  Objections to Email Exhibits.**  The court next addresses Musket's concern relating to all of the emails and other documents attached to the Boyle Declaration that were produced *by Musket* during discovery.  Musket notes that while the state of Texas has a rule that indicates that documents produced by an opposing party are self-authenticating, the federal courts do not have a

parallel rule.  *See* Dkt. 102 (citing Tex. R.Civ. P. 193.7).  Regardless, it defies logic for Musket to argue that emails that it produced from its employees are *not* authentic.  Musket has an obligation under the federal rules to "produce documents as they are kept in the usual course of business."  *See* Fed. R. Civ. P. 34(b).  While the court understands that Musket is simply attempting to hold Suncor to its obligation to authenticate its evidence, in this case the declaration provided indicating that Musket produced these documents—along with the Musket Bates number that is clearly affixed to each document—is sufficient because there is no concern that the emails that Musket produced from its employees are not what they purport to be.  *Cf. Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 607 (E.D. La. 2015) ("Ducks Unlimited produced the email to plaintiffs in discovery and therefore cannot seriously dispute the email's authenticity.").  Musket's objection that the emails that it produced during discovery are not properly authenticated is OVERRULED.

Musket also contends that the emails that Suncor produced and offered into evidence are not properly authenticated.  The court finds that the declaration of Suncor's counsel is sufficient to show that these emails are what they purport to be.  Moreover, Suncor can easily authenticate the emails at trial, which means that the emails can be offered in admissible form at trial.  Therefore, Musket's objection that the emails produced by Suncor are not properly authenticated is OVERRULED.

Finally, Musket makes a general hearsay objection to all the emails.  Suncor does not directly address the hearsay objection but does cite several cases in which courts have overruled hearsay objections when the objecting party did not argue that the information could not be submitted in admissible form at trial.  *See* Dkt. 97 at 3 n.4 (citing, *e.g.*, *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasizing that the standard at the summary judgment stage is whether the evidence "*could* be presented at trial in an admissible form").  Here, the objected-to emails and records should be presented in a form that is admissible at trial because they will fall either into the

6

business records hearsay exception or will be considered admissions of a party opponent and thus

not hearsay.  *See* Fed. R. Evid. 801(d); Fed. R. Evid. 806(6); *see also BP Expl. & Prod. Inc. v.*

*Cashman Equip.*, No. 13-3046, 2016 WL 1387907, at *11 (S.D. Tex. Apr. 8, 2016) ("The exhibits

include documents and emails generated by the parties, admissible as party-opponent admissions

under Rule of Evidence 801(d) and business records under Rule 803(6).").  Musket's general hearsay

objections are OVERRULED.

### 2.       Suncor Exhibits B, C, and G

Musket next objects to Exhibits B, C, and G to Suncor's motion for summary judgment.

Dkt. 84.  These exhibits are transcripts of depositions.  *Id.*  Exhibit B is a transcript of a videotaped

deposition of Chris Ryan.  *Id.*  Exhibit C is a transcript of a videotaped deposition of Fjeld-Hansen.

*Id.*  Exhibit G is a transcript of a videotaped deposition of Clark Henry.  *Id.*  Musket contends that

Suncor improperly redacted testimony and objections from the deposition transcripts, which leaves

the court with the wrong impression.  *Id.*  These objections are all OVERRULED.  This is the

summary judgment stage, and Musket is free to offer the remainder of the testimony in its response

to Suncor's motion for summary judgment if omitted testimony paints a fuller picture.

In sum, all of Musket's objections to evidence offered by Suncor in support of its motion for

summary judgment are OVERRULED.  Accordingly, Musket's motion to strike these exhibits and

the references to these exhibits contained in Suncor's motion is DENIED.

### B.       Suncor's SJE Objections (Dkt. 95)

Suncor objects to "two speculative and conclusory declarations" attached to Musket's

response to Suncor's motion for summary judgment. Dkt. 95.  These declarations are from Musket's

experts J.P. Fjeld-Hansen and Edwin Art Smith.  *Id.*  Suncor asserts that both declarations contain

improper legal conclusions and unsupported assertions and provide nothing more than speculation

about that the conditions precedent to Musket's breach of contract claim. *Id.* Suncor also asserts that both declarations are sham declarations created only to "delay the Court from properly granting summary judgment against Musket." *Id.* Finally, Suncor objects to various deposition excerpts and other exhibits. *Id.* Suncor moves to strike the exhibits or sections of the exhibits because they contain inadmissible evidence and also moves to strike all references to this inadmissible evidence in Musket's response. *Id.* Suncor also requests an award of attorneys' fees under Federal Rule of Civil Procedure 56(h) because it was "forced to move to strike the Fjeld-Hansen Declaration." *Id.*

Musket contends that "Suncor's Motion to Strike is a waste of this Court's resources" and that Suncor's "positions border on the absurd." Dkt. 105. Musket then provides substantial argument as to why the declarations are proper summary judgment evidence and why the declarations are not sham declarations. *Id.*

The court will consider, *in seriatim*, (1) the objections to the Fjeld-Hansen declaration; (2) the objections to the Art Smith declaration; (3) the objections to deposition excerpts; and (4) Suncor's request for attorneys' fees.

### 1.    Fjeld-Hansen Declaration

Suncor moves to strike several different paragraphs of the Fjeld-Hansen declaration because Fjeld-Hansen bases his declaration on hearsay, conclusory assertions, and speculation and because many of Fjeld-Hansen's statements contradict his deposition testimony. Dkt. 95. The court will address these objections in three separate groups.

   **a. Paragraphs 2, 6, 8, 11, 12, 13, 14.** Suncor objects to Fjeld-Hansen's statements in paragraphs 2, 6, 8, 11, 12, 13, and 14 of his declaration. Dkt. 95. The statements at issue here are that (1) Fjeld-Hansen has personal knowledge of the business relationship (para. 2); (2) he has personal knowledge of what the parties discussed with regard to the oil prices each month

8

of the contract, including the profit margins related to each deal (para. 6); (3) that he had personal knowledge of the negotiations to develop the MSA and Confirmation and the parties' performance under these documents (para. 8); (4) that he had personal knowledge due to his position as Managing Director and Vice President and through a thorough review of records related to the MSA and Confirmation (para. 8); (5) that Suncor never told Musket that it desired an exception to the exclusivity provision if Suncor could not supply sufficient crude oil under the MSA and Confirmation (para. 11); (6) that Suncor never told Musket during the term of the MSA that Suncor believed an exception existed that allowed Musket to obtain crude oil from another supplier (para. 12); (7) that Suncor never notified Musket about its belief regarding an exception to the exclusivity provision based on Suncor' inability to obtain sufficient volumes of crude and Suncor never gave Musket approval to seek crude from other suppliers (para. 13); and (8) that Musket could not anticipate whether Suncor would deliver less that the agreed upon volume of crude oil (para. 14). *Id.*

Suncor contends these statements are impermissible hearsay because Fjeld-Hansen was not involved with the negotiations between Suncor and Musket that form the basis of this lawsuit. Dkt. 95.  Suncor cites various excerpts of deposition testimony in which Fjeld-Hansen notes that others were doing the actual negotiating and just passing the information along to Fjeld-Hansen.  *Id.* (citing Dkt. 95, Ex. D at 14, 16, 18, 87–88, 89–90, 91–92, 95–96, 125–26, 263).

Musket argues that this is an "absurd assertion" which is contradicted by the declaration and Fjeld-Hansen's testimony that he (1) participated in a meeting with Suncor officials to finalize language in the Agreement; (2) was involved in crafting and forming the Agreement language; (3) had day-to-day interaction in contract negotiation; (4) was "hands on"; (5) sat on the trade floor; (6) communicated with key people throughout the day; (7) was up to date on the negotiated prices; and

(8) sat five feet away from the people conducting the price negotiations. Dkt. 105. Musket thus contends that the testimony is not based on hearsay. *Id.* Musket additionally argues that the statements are not hearsay because they do not go directly toward the truth of someone else's statement but instead are based on personal knowledge of whether the statement was made at all. *Id.* at 7 n.5 (citing *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 530 (5th Cir. 1992)); Fed. R. Evid. 801(c)). Musket additionally points out that Fjeld-Hansen reviewed thousands of documents and that some of his knowledge is based on that review. *Id.* at 7–8.

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers into evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In *Akin v. Q-L Investments*, which Musket relies on to show that the statements should not be considered hearsay, the Fifth Circuit determined that statements were not hearsay because they "were offered only to show plaintiffs' reliance on [certain] misrepresentations, not the truth of the misrepresented facts." *Akin*, 959 F.2d at 530. The objected-to statements in this securities fraud case were as follows: (1) the affiants learned facts through counsel that, had the affiants known the facts before they invested, would have kept them from investing; and (2) the affiants learned the true net worth of the general partner and would not have invested if that information had been in the offering materials. *Id.* The hearsay in *Akin* is what counsel told the affiants or what the affiants learned about the net worth, and it is clear these statements were not offered to show the truth of what counsel told the affiants or the net worth of the general partner. The same cannot be said for the objected-to testimony here.

Suncor contends that the objected-to statements should be stricken because Fjeld-Hansen testified during his deposition that he had no personal knowledge about the day-to-day communications and negotiations between Suncor and Musket about pricing and volumes and that

the only information he did have was based on hearsay. *Id.* Fjeld-Hansen testified that (1) he did not recall sending emails or letters to Suncor and that "[m]ost of [his] communication was internal with the Musket team, driving them towards the result desired"; (2) Fjeld-Hansen was "involved in negotiations" though a "lot of [his] input was communicated through [Musket's] team who had the day-to-day interaction"; (3) he does not recall the details of all the commercial people who were involved with the negotiations with Suncor; (4) "Clark Henry was the trader who executed the end market transactions and the transactions with Suncor" and the person who negotiated the transactions; (5) Henry executed the crude transactions with Suncor; (6) Fjeld-Hansen had "involvement as [they] were negotiating the overriding contract"; (7) the month-to-month price of oil for Windsor was negotiated by Clark; (8) Fjeld-Hansen did not negotiate the month-to-month prices; (9) Fjeld-Hansen did in fact monitor the prices; (10) certain information about the deal was communicated to Fjeld-Hansen through Clark; (11) Fjeld-Hansen was "heavily involved in monitoring the pricing . . . and in communicating with Clark, giving him guidance on how Fjeld-Hansen felt to maximize the value," and (12) Fjeld-Hansen "did not talk to Kent McAlister directly" and instead "got [his] information from Clark Henry, who [Fjeld-Hansen] was staying in very close communication with during this period because [he] started doubting Suncor's willingness to ultimately perform on [its] assurances." Dkt. 95 & Ex. D. Clearly, Fjeld-Hansen did not directly negotiate the deal. The question then is whether an executive who is not directly involved in negotiating a contract but is guiding the process from afar can be said to have personal knowledge or whether that person's knowledge is based only on hearsay.

In *DirectTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005), the Fifth Circuit noted that Rule 56 requires that declarants base their declarations on personal knowledge. 420 F.3d at 530. It then found that even though the affidavit at issue in that case did not state that the testimony was based

on "personal knowledge," the information was within the affiant's position given his title to be familiar with the investigation that was described in the affidavit. *Id.* The court held that the affiant's personal knowledge was reasonably inferred. *Id.*

In *Diamond Offshore Co. v. Survival Sys., Int'l*, 902 F. Supp. 2d 912, 932 (S.D. Tex. 2012) (Miller, J.), this court cited *DirectTV* and noted that the "court may infer from the affiant's position in the company and nature of his or her participation in the matters to which he or she swore that the affidavit is made upon personal knowledge." The court went on, however, to find that statements made in the affidavit based on what another person said would not be admissible if the statements were offered for the truth of the matter asserted because these statements would constitute hearsay. 902 F. Supp. 2d at 932.

Here, the court agrees that, to the extent the information in the declaration is based on statements (or lack of statements) and is not based on a review of records kept in the ordinary course of business, this information is based on hearsay and not admissible. Thus, the statements about what Suncor never told Musket contained in paragraphs 11, 12, and 13 of the declaration are inadmissible, as only the people directly communicating with Musket are able to speak to what was and what was not said. Additionally, the statement that Fjeld-Hansen had personal knowledge of what the parties *discussed* regarding pricing, as noted in paragraph 6 of the declaration, is based on hearsay and is not admissible.

The following statements, however, are within Fjeld-Hansen's wheelhouse as the managing director and Vice President of Musket and a person directly involved in fashioning Musket's negotiating position: (1) Fjeld-Hansen had personal knowledge of the business relationship (para. 2); (2) he had personal knowledge of the negotiations to develop the MSA and Confirmation and the parties' performance under these documents (para. 8); (3) he had personal knowledge due to his

12

position as Managing Director and Vice President and through a thorough review of records related

to the MSA and Confirmation (para. 8);[1] and (4) Musket could not anticipate whether Suncor would

deliver less than the agreed upon volume of crude oil (para. 14).  Thus, the objections to paragraphs

6, 11, 12, and 13 are SUSTAINED, and the objections to paragraphs 2, 8, and 14 are OVERRULED.

      **b.**      **Paragraphs 17, 18.**  Suncor contends that Fjeld-Hansen's declaration is filled

with impermissible legal conclusions and conclusory assertions with no factual support.  Dkt. 95.

Specifically Suncor objects to paragraphs 17, 18, 19, 20, 21, 22, and 23 of Fjeld-Hansen's

declaration as containing impermissible legal conclusions.  *Id.*  This subsection addresses only

paragraphs 17 and 18.

      In paragraph 17, Fjeld-Hansen states that Musket sustained damages due to Suncor's failure

to deliver the crude oil and that Musket could not avoid these losses because Suncor was the

exclusive supplier.  *Id.* (quoting Dkt. 95, Ex. C ¶ 17).  He also discusses the specific steps Musket

took that it considers to be losses under the contract.  Dkt. 95, Ex. C ¶ 17.  In paragraph 18, Fjeld-

Hansen states that Musket could not purchase from other suppliers because Suncor was the exclusive

supplier and that Musket thus could not avoid the losses outlined in paragraph 17.  Dkt. 95 (quoting

Dkt. 95, Ex. C ¶ 18).

      Musket contends that these two paragraphs do not contain legal conclusions and instead are

factual averments with a detailed foundation set forth in the declaration.  Dkt. 105.  Musket asserts

that Fjeld-Hansen may supply his personal observation based on his personal knowledge about

Musket's damages, what the contract forbade under Musket's understanding, and the practical

implications of the exclusivity provision of the MSA.  *Id.*  The court finds that in paragraphs 17 and

---

    [1] "Personal knowledge, in a corporate setting, may also be based—at least in part—on access to company records and reports, and not just personal presence during the events at issue."  *Munoz v. Echosphere, LLC*, No.09-CV-0308-KC, 2010 WL 2838356, at *2 (W.D. Tex. July 15, 2010).

18, Fjeld-Hansen is discussing Musket's actions based on its understanding of the legal meaning of the contract.  The court will not rely on the statements for the proposition that "Suncor was the exclusive supplier" under the contract, but it will rely on the statements insofar as they indicate that Musket believed that Suncor was the exclusive supplier under the contract.  The objections to paragraphs 17 and 18 are therefore SUSTAINED IN PART AND OVERRULED IN PART.  They are SUSTAINED to the extent Fjeld-Hansen purports to opine of the legal meaning of the contract; they are otherwise OVERRULED.

   **c.**  **Paragraphs 19 through 23.**  Suncor also objects to paragraphs 19 through 23 because they contain impermissible legal conclusions and because Fjeld-Hansen has no personal knowledge about the day-to-day communications or negotiations between Suncor and Musket about pricing and volumes of crude oil during the term of the MSA.  Dkt. 95.  Suncor objects that the only information Fjeld-Hansen has about pricing and volumes during the term of the MSA is based on hearsay.  *Id.*  Finally, Suncor contends that many of these statements are untimely expert opinions that contradict Fjeld-Hansen's deposition testimony and are thus purely speculative.  *Id.*

   Paragraph 19 states that "Musket and Suncor exhausted reasonable efforts every month to determine a price for the Committed Volume of crude oil" and that the "Parties were not able to agree on a price for those Committed Volumes that were not included within the Parties' confirmations" and that "for nearly every single month of the Agreement, the Parties did not agree on a price . . . ."  *Id.* (quoting Dkt. 95, Ex. C ¶ 19).  Paragraph 20 states that "Suncor owes Musket under the take or pay provision set forth in 'Alternative #2' of the Parties' contract as a result of Suncor's failure to perform under the contract."[2]  *Id.* (quoting Dkt. 95, Ex. C ¶ 20).  Paragraph 21

---

   [2] Paragraph 20 also states that Suncor has not paid Musket under the take-and-pay provision. Dkt. 95, Ex. C ¶ 20.  Suncor does not object to this portion of the paragraph as a legal conclusion.

discusses how the parties "did not locate a profitable market for the full Committed Volumes set forth in the Confirmation," that "Musket consistently sought a profitable market for crude oil," and that if "Musket did not pursue a purchase [of] crude oil for sale to a downstream market, it was because Musket could not identify a profitable market for that crude oil." *Id.* (quoting Dkt. 95, Ex. C ¶ 21). Paragraph 22 notes that "Suncor's failure to deliver the requisite barrels of crude oil shows the Windsor terminal was an unprofitable market under the contract." *Id.* (quoting Dkt. 95, Ex. C ¶ 22). Paragraph 23 states that Musket provided notice to Suncor of quantity deficiencies through daily updates. *Id.* (quoting Dkt. 95, Ex. C ¶ 23).

The court will first consider whether these statements are impermissible legal conclusions. The only paragraph in paragraphs 19–23 that contains a legal conclusion is the objected-to portion of paragraph 20, which refers to Suncor owing Musket money under a certain provision of the MSA. Musket's objection to the first sentence in paragraph 20 is SUSTAINED and the court will not consider this statement because it is a legal conclusion.

Next, the court addresses Suncor's objection that these statements are based on hearsay and not on Fjeld-Hansen's personal knowledge. The court finds that all of the objected-to statements in paragraphs 19–23 are within the ambit of things that Fjeld-Hansen would know due to his position in the company and through internal discussions and documentation. While Suncor objects that the only information Fjeld-Hansen has about pricing and volumes during the term of the MSA are based on hearsay, these statements are not used to prove the amount of the pricing and volumes, but rather the effect of the pricing and volumes on company decisions. Accordingly, these objections are OVERRULED.

Suncor's final objection to these paragraphs is that they are untimely expert opinions. The court disagrees. Fjeld-Hansen is a company executive and is speaking about his knowledge related to the company. This objection is OVERRULED.

### 2.    Edwin Art Smith's Declaration

Suncor asserts that the court should strike Edwin Art Smith's declaration because it contains speculative and unsupported assertions that cannot be relied upon to survive summary judgment. Dkt. 95. Suncor notes that Musket submitted Smith's declaration and expert report to support its response to Suncor's motion for summary judgment, but that Musket does not actually cite any of Smith's deposition testimony. *Id.* Since Musket does not use Smith's declaration to support its response, the court declines to rule on its admissibility at this point.

### 3.    Deposition Excerpts

Suncor objects to various deposition excerpts that Musket submitted in support of its motion, contending that the excerpts provided are incomplete and misleading. Dkt. 95. This objection is OVERRULED, as Suncor can simply provide complete excerpts in its reply to Musket's response.

### 4.    Request for Attorneys' Fees Under Rule 56(h)

Suncor requests that the court award it attorneys' fees and expenses because Musket, "[i]n an eleventh hour attempt to avoid summary judgment on its claims, . . . submitted a conclusory declaration based on speculation, hearsay, and unsupported assumptions that contradicted prior deposition testimony from Mr. Fjeld-Hansen." Dkt. 95. Suncor asserts this submission was in bad faith and done "solely to delay the inevitable dismissal of Musket's claims." *Id.* Under Rule 56(h), if a party submits an affidavit or declaration under Rule 56 in bad faith or solely for delay, a court "may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred." Fed. R. Civ. P. 56(h). Here, the court does not believe Musket submitted the

Fjeld-Hansen declaration in bad faith.  Suncor's motion for attorneys' fees under Rule 56(h) is DENIED.

In sum, Suncor's objections to Musket's evidence are SUSTAINED IN PART AND OVERRULED IN PART, and the motion to strike is accordingly GRANTED IN PART AND DENIED IN PART.  The court will not consider the statements in the Fjeld-Hansen declaration that it has deemed to be based on hearsay or to be legal conclusions.

### C. Musket's PSJE Objections (Dkt. 99)

Musket objects to the following exhibits attached to Suncor's response to Musket's motion for partial summary judgment: Exhibits B (Ryan Dep.), C (Fjeld-Hansen Dep.), E (McAlister Dep.), F (Irsik Dep.), G (Techentien Dep.), H (Tate Dep.), I (McFadyen Dep.), J (Henry Dep.), M-2, M-3, M-4, M-5, M-7, M-8, M-9, M-10, M-11, M-12, M-14, M-16, M-17, M-19, M-20, M-21, M-22, M-23, M-24, M-25, M-26, M-27, M-31, and M-34.  The court will first consider the objections to deposition excerpts (Exs. B, C, E, F, G, H, I, J), and it will then address the objections to the M exhibits, which are emails that were attached to the declaration of Suncor's counsel Brian Boyle.

### 1. Deposition Excerpts

Musket moves to strike certain testimony in the McAlister deposition because it is hearsay or was provided in response to leading questions.  Dkt. 99.  Musket also asserts that "Suncor improperly cut[] the deposition testimony responses without regard to veracity."  *Id.*  The alleged improper cutting relates to the deposition excerpts at Exhibits B, C, E, F, G, H, I, and J. With regard to Suncor's alleged improper cutting of the testimony, since this is the summary judgment stage, all Musket needs to do to remedy this issue is provide the remainder of testimony in its reply.  Thus, the improper cutting objections are OVERRULED.

With regard to hearsay, Musket contends that the portions (pages 392:15-25, 128:5-11, 393:8–17) of the McAlister deposition cited in Suncor's brief discuss how Musket was aware of a cover requirement based on conversations with Clark Henry. *Id.* Musket responds that these statements are admissible as statements of a party opponent, as the statements relate what Henry—Musket's employee—discussed with McAlister during a meeting in the summer of 2014. Under Federal Rule of Evidence 801(d)(2), a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2). The court agrees. These statements are clearly those of a party-opponent and are excluded from the rule against hearsay. The hearsay objections are OVERRULED.

Finally, Musket objects to certain excerpts from the McAlister deposition because the responses resulted from leading questions. Specifically, Musket objects to the excerpts contained at page 392:15–25 and 393:8–17. Dkt. 99. Suncor responds that the questions eliciting these responses were *not* leading and, even if they were, the court has discretion to permit leading questions. Dkt. 101. The court has reviewed the questions, and they are leading. *See* Dkt. 82, Ex. E at 392–393 (Dkt. 82-6). Under Federal Rule of Evidence 611(c), "Leading questions should not be used on direct examination *except as necessary to develop the witness's testimony.*" Fed. R. Evid. 611(c) (emphasis added). Here, the questions were needed to develop testimony that is important to ascertaining what happened in this case. The leading question objection is OVERRULED.

### 2.   Objections to Emails Attached to Boyle's Declaration

Musket moves to strike the exhibits attached to Boyle's declaration because they have not been properly authenticated and are hearsay. Dkt. 99. The challenged documents were produced by Musket. *See id.* ("The fact that the documents challenged by Musket bear a Bates number with

a "MUSKET-SUNCOR" prefix (produced by Musket) does not itself establish their authenticity.").

These objections are OVERRULED for the same reason Musket's objection to emails attached to

Boyle's declaration in support of Suncor's motion for summary judgment were overruled.

### III. CONCLUSION

Musket's SJE Objections are OVERRULED and its motion to strike is DENIED.  Suncor's

SJE Objections are SUSTAINED IN PART AND OVERRULED IN PART as outlined above, and

its motion is GRANTED IN PART AND DENIED IN PART in accordance with the rulings on the

objections.  Musket's PSJE Objections are OVERRULED, and its motion to strike is DENIED.

Signed at Houston, Texas on November 15, 2016.

_____
Gray H. Miller
United States District Judge