United States District Court
Southern District of Texas
**ENTERED**
November 29, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUSKET CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-100 |
| | § | |
| SUNCOR ENERGY (U.S.A.) MARKETING, INC., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is a motion to strike or disregard the declarations of Josh Irsik and Brian Boyle and request for attorneys' fees filed by plaintiff Musket Corporation ("Musket"). Dkt. 81. After considering the motion, response, supplemental response, reply, and the applicable law, the court is of the opinion that the motion to strike should be DENIED, Musket's objections should be substantially OVERRULED, and Musket's request for attorneys' fees should be DENIED.

### I. BACKGROUND

This is a breach of contract case. Musket is a commodity supply, trading, and logistics company, and Suncor is a crude oil supply, marketing, and trading company. Dkt. 25 (second amended complaint). In April 2013, Musket and defendant Suncor Energy (U.S.A.) Marketing, Inc. ("Suncor") entered into a Master Agreement for U.S. Crude Oil Purchase, Sale, or Exchange Transactions (the "MSA") and a Physical Confirmation Transaction (the "Confirmation"). The MSA relates to Musket's agreement to buy and Suncor's agreement to sell crude oil. *Id.* The Confirmation establishes the logistics such as quantities, delivery dates, and price. *Id.* Musket claims that Suncor did not deliver the crude oil in the agreed-upon quantities, did not comply with the compensation provisions in the Confirmation, and failed to abide by the confidentiality provisions in the MSA and Confirmation. *Id.* Suncor asserts various affirmative defenses, including that (1) Musket's claims are barred by Section S of the MSA, which relates to exclusions and

limitations; and (2) Musket's claims are barred due to the occurrence of an Interruption as defined by the MSA. Dkt. 37.

Both parties have moved for summary judgment and asserted multiple evidentiary objections. This order addresses only the objections contained at docket entry 81, which relate to the Irsik and Boyle declarations that Suncor submitted in response to Musket's motion for summary judgment on Suncor's counterclaim. Irsik manages the buying and selling of crude oil for Suncor. Dkt. 79, Ex. K (Dkt. 79-8). His declaration addresses Musket's alleged failure to provide adequate railcars at its Windsor Terminal, which Suncor contends interfered with its ability to ratably deliver crude oil. *See id.* Boyle is counsel for Suncor, and his declaration simply notes that the exhibits attached in support of Suncor's response are true and correct copies. Dkt. 79-1. Boyle also filed an amended declaration in which he discusses which exhibits were produced by whom and when during discovery. *See* Dkt. 96-1.

Musket argues that the court should disregard specific paragraphs of the Irsik declaration because (1) it is a sham declaration; (2) some paragraphs are not based on personal knowledge or a proper foundation; (3) some paragraphs contain hearsay; and (4) some of Irsik's statements are conclusions of law or ultimate fact. Dkt. 81. Musket argues that the court should strike the Boyle declaration and certain exhibits attached thereto because Boyle, who is an attorney, cannot authenticate the Musket documents attached to his declaration. *Id.* Musket additionally contends that the amended Boyle declaration attached to Suncor's supplement is "too little, too late." Dkt. 103. Finally, Musket requests attorneys' fees and costs under Federal Rule of Civil Procedure 56(h), arguing that Irsik's sham declaration was submitted in bad faith or solely for delay. Dkt. 81. The court will first discuss the legal standard for each of these arguments and then analyze whether the evidence should be considered.

## II. LEGAL STANDARDS

### A.  Sham Declaration

A sham affidavit or declaration is basically an affidavit or declaration that contradicts prior deposition testimony.  *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 749 (S.D. Tex. 2012) (Rosenthal, J.).  Under the sham affidavit rule, a party may not "'manufacture a dispute of fact merely to defeat a motion for summary judgment.'"  *Axxiom Mfg.*, 846 F. Supp. 2d at 749 (quoting *EBC, Inc. v. Clark Bldg. Sys. Inc.*, 618 F.3d 253, 269 (3d Cir. 2010)).  The Fifth Circuit has reasoned:

> "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit [or declaration] contradicting his [or her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

*Doe*, 220 F.3d at 386 (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).  That being said, an affidavit or declaration that contradicts prior testimony "should not be automatically disregarded."  *Axxiom Mfg.*, 846 F. Supp. 2d at 750.  Instead, the court must determine if there are sufficient reasons given for the change in testimony, if the proposed change in testimony reflects the original testimony, and whether "'other circumstances satisfy the court that amendment should be permitted.'"  *Id.* (quoting *EBC, Inc.*, 618 F.3d at 270).  Courts must apply the sham affidavit rule "'sparingly'" as it could have a "'harsh effect'" on a party's case.  *Id.* (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010)).

### B.  Authentication

Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

Fed. R. Civ. P. 56(c)(2).  The comments to the Rule indicate that "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment.  Under Rule 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Under Federal Rule of Evidence 901(a), in order to properly authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Taken together, it is clear that these rules allow evidence at the summary judgment stage that is not perfectly authenticated so long as there is no question that the proponent will be able to prove that the evidence is what it purports to be at trial.

C.      **Hearsay**

Under Federal Rule of Evidence 802, hearsay "is not admissible unless" a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise." Fed. R. Evid. 802.  There are, of course, many exceptions to the rule against hearsay in the Federal Rules of Evidence, including the business records exception (Rule 803(6)).  And, certain types of statements are not hearsay under the Rules, such as a statement by an opposing party that is offered against that party (Rule 801(d)) ("Statements That Are Not Hearsay").

D.      **Conclusions of Law or Ultimate Fact**

A "party opposing a motion supported by affidavits [or declarations] cannot discharge [its] burden by alleging legal conclusions." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

### III. ANALYSIS

A.     **Sham Declaration**

Musket argues that Irsik's testimony on March 8, 2016, and May 5, 2016, "completely undermined Suncor's Counterclaim in this case" and is "dispositive to the question of Suncor's ability to maintain its claim for damages under Paragraph (ii) of the 'Additional Provisions'" in the Confirmation. Dkt. 81. Musket contends that paragraphs 4 through 11 of the Irsik declaration contradict his deposition testimony and must be stricken. *Id.*

In paragraphs 4 through 5 of his declaration, Irsik discusses Musket's alleged failure to provide adequate railcars at the its Windsor Terminal during the term of the MSA. *See* Dkt. 79, Ex. K ¶¶ 4–5. Irsik states that Musket failed to provide the cars "from at least October 2013 through July 2014 and November 2014 to March 2015." *Id.* ¶ 4. Irsik asserts that the failure to provide the cars "caused Suncor to divert crude oil to an Alternate Buyer/Delivery Point," and, specifically, that Suncor had to divert additional crude oil volumes to alternate buyers from October 2013 to July 2014 and from November 2014 to December 2014. *Id.* ¶ 5.

Musket points out that during his deposition, Irsik could not specifically identify a three-month period during which Suncor had to divert crude oil, which is critical to supporting Suncor's counterclaim. Dkt. 81. Musket contends that Irsik's inability to identify the time period during his deposition "directly contradicts" paragraphs 4–5 of his declaration, which identify time periods. Dkt. 81. During the deposition, when asked, "What consecutive three-month period does [Suncor] contend Musket did not provide railcars, in a manner that was impacting Suncor's ability to deliver?," Irsik stated, "We had missed deliveries throughout the contract, due to lack of capacity. I don't believe we specified a specific three-month period at all." And, when asked to provide a specific three-month period, Irsik stated that he could not do so "off the top of [his] head." Dkt. 81,

Ex. B at 325:15–24. The deposition and declaration are not clearly contradictory. Instead, the declaration supplements the information that Irsik could not recall "off the top of his head" at the deposition. Irsik specifically notes in his declaration that it is based on a review of records. *See* Dkt. 79, Ex. K ¶ 4.

Musket also contends that Irsik's comment that there was a diversion of crude oil in paragraph 5 of his declaration conflicts with Irsik's admission at his deposition that Suncor never provided Musket with notice that a failure to procure rail cars was interfering with Suncor's ability to deliver oil. Dkt. 81. This is not contradictory as the declaration relates to the actual diversion and the deposition testimony relates to notice of the diversion.

Musket next contends that Irsik's statement in paragraph 6 of his declaration that the "parties understood that when Musket turned away crude oil from Suncor due to lack of railcars, Suncor was forced to deliver the crude oil to an Alternate Buyer/Delivery Point" contradicts his acknowledgment during his deposition that Suncor never supplied notice to Musket that its failure to provide railcars interfered with Suncor's ability to deliver crude oil to Musket. Dkt. 81. During the deposition, when asked whether Suncor ever notified Musket that it would deliver to an alternative buyer or delivery point, Irsik stated, "Not that I'm aware of, no, sir." Dkt. 96, Ex. C (Dkt. 96-3) at 309–10. Suncor points out that Irsik's testimony (cited by Musket) that he does not recall actually notifying Musket about the diversions does not conflict with his repeated testimony during his deposition that the parties discussed diverting the crude oil. *See* Dkt. 96 at 6–7 (citing Dkt. 96, Ex. C at 126–27, 150, 167–68, 265–66, 309, 317–20, 322–23, 324–25, 402–04). Suncor additionally argues that even if the court were to determine that the statement expounds on Irsik's deposition testimony, it may be used as summary judgment evidence. *Id.*

The court finds that the testimony that Irsik was not aware if Suncor notified Musket that it would deliver it to an alternative buyer is not inconsistent with his statement that the "parties understood . . . that Suncor was forced to deliver the crude oil to an Alternate Buyer/Delivery Point." The parties could have had general discussions about this, as noted in the Irsik deposition testimony cited by Suncor, without Irsik being aware of an affirmative notification to Musket about Suncor's delivery to an alternative buyer. *See* Dkt. 96, Ex. C at 168 ("There were almost daily discussions between the scheduling groups on what volumes to expect."); Dkt. 96, Ex. C at 323 ("Musket would request that either we slow trucks, due to lack of tank room, trains wouldn't arrive on time, so they would ask that we restrict volume to send to the terminal in order to maintain from shutting the terminal out."); Dkt. 96, Ex. C at 324–25 ("There are quite a few emails between the two entities" about "where they were supposed to go with the crude because the terminal would not accept it.").

Musket next contends that Irsik's statement in paragraph 7 of his declaration that the Windsor Terminal was "never able to ratably accept the Committed Volumes of crude oil due to the Windsor Terminal's lack of capacity, lack of rail cars, inadequate loading times, missed train switches, mechanical failures and problems and delays in surrounding its SafeRack" conflicts with his testimony during his Rule 30(b)(6) deposition that he did not have specifics about the terminals that were closed and how long the closures lasted or when they did not have capacity to take the crude oil. Dkt. 81 at 13. Irsik also did not know during his Rule 30(b)(6) deposition how many barrels the Windsor Terminal could take per day ratably. *See id.* The court, however, finds that the fact that he could not provide these details during the deposition does not make his expansion on the concepts after reviewing documents for his declaration a sham. There is no conflict.

In paragraph 9 of his declaration, Irsik discusses how section S of the MSA provides for damages to Suncor if Musket cannot accept crude oil at the Windsor Terminal. *See* Dkt. 81 at 16

7

(quoting paragraph 9). He goes on to note that Suncor provided damages calculations with its interrogatory responses and disclosures. Paragraph 10 points to a table containing an alternative damages calculation. *Id.* (quoting paragraph 10). And in paragraph 11, Irsik states that Suncor provided a sufficient amount of crude oil and that when Windsor Terminal could not take its nominated volume, the crude oil had to be diverted. *Id.* (quoting paragraph 11). Irsik asserts that Musket owes Suncor $1.50 for each diverted barrel associated with a three-month period during the term of the MSA. *Id.* (quoting paragraph 11).

Musket contends that these paragraphs conflict with Irsik's deposition testimony because, when asked about damages, Irsik testified: "I don't have the – the exact dollar figure in front of me, nor did I memorize it, but we calculated based on the provisions within the – the agreement." Dkt. 81 & Ex. B. at 306–07. Irsik also testified that he did not "have a damage figure" for the Section S damages Suncor was claiming. Dkt. 81, Ex. B. at 331. Musket asserts that it relied on the testimony that Irsik did not know what damages Suncor had for its motion for summary judgment and that it is not proper for Irsik to now come forward with damages in his declaration just to survive summary judgment. Dkt. 81 at 18.

Suncor notes that it provided the damages calculation discussed in Irsik's declaration two months prior to the filing of the Irsik declaration as part of an interrogatory answer. Dkt. 96 at 9. It also notes that another Suncor witness testified about the damages at his deposition. *Id.* at 10.

In reply, Musket relies on *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, Civ. A. 06-CV-0271, 2007 WL 4410370 (N.D. Tex. Dec. 14, 2007). Musket argues that under *Super Future Equities*, Irsik should not be able to claim ignorance of damages at a Rule 30(b)(6) deposition and then come forward with detailed averments contradicting his deposition testimony. *See* Dkt. 103 at 5. The court in *Super Future Equities* indeed excluded the damages portion of a declaration

8

because the person offering the declaration had testified during his Rule 30(b)(6) deposition that he could not quantify damages "as he sat there" and that he believed his company would have a damages expert. 2007 WL 4410370, at *8. The court ruled that because the declarant had "testified previously that he could not quantify the damages and ha[d] not offered an explanation for his change in position, his affidavit should be excluded under Rule 30(b)(6)." *Id.*

Here, Musket moves to exclude this testimony because as a "sham declaration," not because it contends that Irsik was not properly prepared for his Rule 30(b)(6) deposition. There is no conflict in the testimony during the Rule 30(b)(6) deposition, which notes that Suncor calculated damages and that Irsik just did not currently have the calculations, and the declaration, which points to damage calculations that were provided to Musket during discovery. The fact that Irsik did not immediately recall exact figures during his deposition is not grounds to exclude information that Musket clearly received in sufficient time during discovery.

In sum, none of the testimony that Musket claims is contradictory and provided solely to create an issue of material fact is of concern to the court at this time. Musket's motion to strike portions of Irsik's declaration as a sham declaration is DENIED.

**B.      Other Objections to the Irsik Declaration**

Musket contends that paragraphs 4 through 5 of Irsik's declaration, which relate to Musket's alleged failure to provide railcars and Suncor's need to divert crude oil to an Alternate Buyer/Delivery Point, contain improper lay witness testimony, improper legal conclusions, and lack foundation, and that Irsik lacks personal knowledge of the statements contained in these paragraphs. Dkt. 81. As to the lay witness testimony, Musket takes issue with Irsik's statement that Musket's failure to provide enough railcars "unreasonably interfered" with delivery. The MSA contains the term "unreasonably interfered," and Musket asserts that Irsik is not competent to testify as an expert

9

on the reasonableness of Musket's actions. Dkt. 81 at 8. Musket also takes issue with this statement because it is based on reading the documents, not on Irsik's personal knowledge. *Id.* Irsik, however, who is in charge of the buying and selling of crude oil at Suncor, may opine based on the documents and his position in the company. The court will not consider Irsik's opinion regarding whether the interference was unreasonable.

Musket also contends that Irsik's statements that the failure to provide railcars caused Suncor to deliver to an "Alternate Buyer/Delivery Point" is an improper legal conclusion because "Alternate Buyer/Delivery Point" is defined in the contract. Dkt. 81 at 8. The court finds that, notwithstanding the fact that "Alternate Buyer/Delivery Point" is defined, Irsik's statement that Suncor had to take the crude oil someplace else is clearly a factual statement and not a legal conclusion.

Musket next argues that Irsik's statement that Musket failed to provide the railcars during specific time periods which unreasonably interfered with Suncor's ability to ratably deliver the oil lacks foundation, as Irsik uses broad testimony on time periods covering the majority of the MSA's term. Dkt. 81 at 9. Musket also argues that Irsik's statements about Suncor providing the proper volumes does not have a proper foundation. *Id.* While Irsik provides a "voluminous spreadsheet" to support this statement, Musket asserts that Irsik "does not bother to explain (and cannot explain) how the numbers add up to sufficient volume that satisfies the Parties' Agreement." *Id.* These purported problems with Irsik's substantiation are not reason to strike the declaration. The court will consider the parties' arguments regarding whether the spreadsheet and Irsik's interpretation of it are sufficient to raise an issue of material fact when considering the motion for summary judgment. A motion to strike is not a proper vehicle to argue whether a party has met its summary judgment burden.

Musket next contends that the court should strike paragraphs 4 and 5 of Irsik's declaration because the statements are not based on personal knowledge. Dkt. 81 at 10. Irsik states in the declaration that he is relying on records related to the MSA and Confirmation. *Id.* Suncor responds to this objection by citing *United States v. Herndon*, Civ. A. No. C-11-318, 2012 WL 4718622, at *4 (S.D. Tex. Aug. 8, 2012) (Owsley, J), in which the court stated that an "affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns." This court agrees that Irsik's affidavit should not be stricken simply because he relied on his review of the records and his knowledge as the person in charge of buying and selling crude oil at Suncor.

Musket next objects to paragraph 6 of Irsik's declaration as containing an improper legal conclusion, hearsay, and lacking foundation and personal knowledge. Dkt. 81 at 12. Paragraph 6 relates to the parties' alleged understanding that when Musket turned the crude oil away, Suncor was forced to deliver it elsewhere. *Id.* at 11 (quoting paragraph 6). Musket contends that Irsik's statement that "Musket never prohibited the deliver of crude oil to these three Alternate Buyers/Delivery Points when Suncor was unable to deliver crude oil" is an opinion on an ultimate issue of fact and cannot support summary judgment. Dkt. 81 at 12. However, the court views this statement as factual, indicating that Irsik never actually witnessed or knew of Musket attempting to prohibit the delivery. As far as hearsay, Musket contends the statements in the paragraph are hearsay because Irsik states they are based on "communications between Suncor and Musket" and notes things were "communicated to Musket throughout the Agreement." *Id.* To the extent that Irsik is relying on documents produced by Musket, these are statements of a party-opponent and not hearsay. *See* Fed. R. Evid. 801(d). To the extent that Irsik is relying on statements made by Suncor to

Musket, Irsik is able to discuss what Suncor did due to his position in the company. The objection that the statements lack foundation and are not based on personal knowledge are similarly unavailing.

Musket objects that paragraph 7 or Irsik's declaration lacks foundation and personal knowledge and contains improper lay witness testimony. Dkt. 81 at 14. Paragraph 7 states that the Windsor Terminal was "'never able to ratably accept the Committed Volumes of crude oil'" for various reasons. *Id.* at 13 (quoting paragraph 7). Musket contends the statement is conclusory and fails to demonstrate that Irsik has personal knowledge of the facts. Musket argues that Irsik is not an expert and has not worked at Windsor Terminal and cannot advance these ideas based on unspecified documents. *Id.* at 14. The court disagrees. Irsik may discuss these issues in a declaration due to his review of the documents and his job at Suncor.

Musket objects to paragraph 8 as an improper legal conclusion, lacking foundation or personal knowledge, and containing hearsay. Dkt 81 at 15–16. Paragraph 8 relates to the parties' understanding that Suncor would have to take the crude oil elsewhere when turned away, notes specifically where it was taken, and states that Musket never prohibited the delivery of crude oil to these places. *Id.* at 15 (quoting paragraph 8). Musket objects to the statement in the last sentence of paragraph 8—that Musket never prohibited the delivery to "Alternate Buyers/ Delivery Points"—as an improper legal conclusion. However, this is a statement of fact, not a legal conclusion. While "Alternate Buyers/Delivery Points" is a defined term in the contract, the statement that the items had to be delivered to whatever places the contract defines as alternatives is not a legal conclusion. Musket's objection that the statements in the paragraph lack foundation and are not based on personal knowledge fail for the same reasons these objections fail as to the other paragraphs. Irsik's position in the company and his review of the records provide him with

enough information to make these statements. Finally, the hearsay objection relates to statements in the paragraph that Irsik was relying on "communications between Suncor and Musket" and that information was "communicated to Musket throughout the agreement." To the extent that Irsik is relying on documents produced by Musket, these are statements of a party-opponent and not hearsay. To the extent that Irsik is relying on statement made by Suncor to Musket, Irsik is able to discuss what Suncor did due to his position in the company.

Musket's final objections to the Irsik declaration are to paragraphs 9 through 11, which Musket contends contain improper lay witness testimony and legal conclusions and lack foundation. Dkt. 81 at 18. These paragraphs discuss Suncor's alleged damages under the MSA and Confirmation. Dkt. 81 at 16 (quoting paragraphs 9–11). Musket objects pursuant to Federal Rule of Evidence 701 that Irsik does not have the requisite knowledge to determine damages and has not been designated as an expert. *Id.* at 18. Under Rule 701, a lay witness's opinion testimony is limited to that which is "rationally based on the witness's perception"; "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The objected-to paragraphs point to Suncor's response to Musket's Interrogatory 15. The court has reviewed the response and attachments containing damages calculations under Paragraph S and finds that the calculations consist of simple subtraction and multiplication and do not require an expert. To the extent Musket disagrees with the calculations or methods used, it is free to offer specific criticisms in its reply to Suncor's response to Musket's motion for summary judgment.

In sum, all of Musket's objections to Irsik's declaration are OVERRULED except that the court will not consider whether Irsik believes Musket's actions were unreasonable.

### C.  Boyle's Declaration

Musket's objections to Boyle's declaration and amended declaration are OVERRULED for the same reasons the court overruled the same types of objections to the declaration and amended declaration Boyle submitted in support of Suncor's motion for summary judgment. *See* Dkt. 110.

### IV. CONCLUSION

Musket's motion to strike is DENIED.  All of Musket's objections are OVERRULED except that the court will not consider Irsik's opinion about the reasonableness of Musket's actions. Musket's request for attorneys' fees in DENIED.

Signed at Houston, Texas on November 29, 2016.

_____
Gray H. Miller
United States District Judge